## FALKENSTEIN'S MEAT COMPANY,
*Appellant,*

*v.*

## MARYLAND CASUALTY COMPANY,
*Respondent.*

(16-86-01587; CA A40977)

754 P2d 621

Randall E. Thwing, Eugene, argued the cause for appellant. With him on the briefs were Sidney E. Thwing, and Thwing & Thwing, Eugene.

I. Franklin Hunsaker, Portland, argued the cause for respondent. With him on the brief were S. Joel Wilson, R. Daniel Lindahl, and Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiff brought this declaratory judgment action against its liability insurer to determine whether it has a duty to defend an action brought by a former employe. On cross-motions for summary judgment, the trial court granted defendant's motion, denied plaintiff's and entered judgment for defendant. Plaintiff appeals. We agree with the trial court's determination that defendant had no duty to defend plaintiff and affirm.

Defendant issued a comprehensive general liability policy to plaintiff. It provides, in part:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

"to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *."

On February 22 and 23, 1984, plaintiff's employe Michaud complained that plaintiff was not providing a safe place of employment and that the vehicle which he was assigned to operate was unsafe. On February 24, 1984, plaintiff removed Michaud from his position as a permanent long-haul driver and re-assigned him to a permanent on-call position, which required that he call each morning at 7 a.m. to determine whether he was to work that day. Michaud's working hours were reduced from an average of 45 hours per week to 22 hours per week.

In 1985, Michaud sued plaintiff, contending that plaintiff's action was in retaliation for his complaints and constituted an unlawful employment practice. The complaint prayed for damages for emotional distress, impaired personal dignity and loss of wages.[1] Plaintiff tendered defense of the action to defendant. Defendant refused to defend, asserting

---

[1] Michaud also asserted a claim for "outrageous conduct." However, on appeal, plaintiff concedes that that claim is not covered by the insurance policy.

that the harm alleged was not "bodily injury," that the alleged conduct did not constitute an "occurrence" within the meaning of the policy and that the alleged conduct was specifically exempt from coverage pursuant to an exclusion in the insurance contract.

■■ We first address whether plaintiff's alleged conduct constitutes an "occurrence" within the meaning of the policy. An insurer has a duty to defend if the claimant can recover against the insured under the allegations of the complaint on any basis for which the policy affords coverage. *Nielsen v. St. Paul Companies*, 283 Or 277, 280, 538 P2d 545 (1978). The duty to defend is determined by comparing the terms of the insurance policy with the allegations of the complaint. *Oakridge Comm. Ambulance v. U.S. Fidelity*, 278 Or 21, 24, 563 P2d 164 (1977). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Defendant argues that the allegation of retaliation in Michaud's complaint involves intentional rather than accidental conduct and, therefore, is not within the policy definition of "occurrence." Plaintiff contends that, because Michaud's complaint does not allege that defendant intended the harm which occurred as a result of the conduct, it did involve an "occurrence" under the policy.[2]

In *Cunningham & Walsh, Inc. v. Atlantic Mutual Ins.,* 88 Or App 251, 255, 744 P2d 1317 (1987), *rev den* 305 Or 102 (1988), we held that an allegation that an insured acted intentionally or volitionally was not enough to prevent coverage under a policy which included the identical definition of "occurrence" at issue in this case. It must also be alleged or

---

[2] At oral argument, plaintiff also argued that Michaud's complaint could be read to allege negligent conduct on a theory that an allegation of intentional conduct includes an allegation of negligent conduct. The Supreme Court has held that a duty to defend may arise under a complaint which alleges intentional conduct when the allegation could include the lesser conduct of negligence. *Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 507, 460 P2d 342 (1969). That principle is not applicable here. First, there are no facts in the complaint to indicate that negligent conduct was involved. *See Albertson's Inc. v. Great Southwest Fire Ins. Co.,* 83 Or App 527, 532, 732 P2d 916, *rev den* 303 Or 332 (1987). Second, the complaint alleges that plaintiff's intentional conduct in removing and reassigning Michaud was in retaliation for Michaud's complaints. Those allegations state causes of action for discrimination and an unlawful employment practice, neither of which can encompass negligent conduct.

necessarily inferred that some harm was intended by the intentional act. In *Cunningham,* which involved an action for deceit, we held that, although no specific type of intentional harm was alleged, because deceit by its nature is an action from which the intention to do harm must necessarily be inferred, it was of no consequence that the specific harm for which relief was sought was not alleged to have been intended. In this case, the underlying complaint alleges retaliation and is based on a claim of intentional discriminatory conduct in violation of ORS 654.062(5)(a).[3] The complaint does not allege a specific type of intentional harm. However, retaliatory and discriminatory conduct pursuant to ORS 654.062(5)(a) are acts from which an intention to cause harm must necessarily be inferred. *See Cunningham & Walsh, Inc. v. Atlantic Mutual Ins., supra; Allstate Ins. Co. v. Browning,* 593 F Supp 421 (D Or 1983); *Mary & Alice Ford Nurs. Home v. Fireman's Ins.,* 86 App Div 2d 736, 446 NYS2d 599, *aff'd* 57 NY2d 656, 439 NE2d 883 (1982). When an employer retaliates against or discriminates against an employe in violation of ORS 654.062(5)(a), the natural and intended consequence is to cause some type of harm to the employe. It cannot be said either that the conduct was accidental or that the resulting harm was unexpected or unforeseen by the employer.

Accordingly, we hold that the alleged conduct in Michaud's complaint is not an "occurrence" under the policy and that, therefore, defendant had no duty to defend plaintiff.[4]

Affirmed.

---

[3] Although Michaud did not allege a specific statutory violation in his complaint, on appeal, plaintiff contends that defendant's conduct constituted a violation of ORS 654.062(5)(a):

"It is an unlawful employment practice for any person to bar or discharge from employment or otherwise discriminate against any employe or prospective employe because such employe has opposed any practice forbidden by ORS 654.001 to 654.295 and 654.750 to 654.780, made any complaint or instituted or caused to be instituted any proceeding under or related to ORS 654.001 to 654.295 and 654.750 to 654.780, or has testified or is about to testify in any such proceeding, or because of the exercise of such employe on behalf of the employe or others of any right afforded by ORS 654.001 to 654.295 and 654.750 to 654.780."

[4] In the light of our holding, we need not reach the questions of whether the complaint alleged "bodily injury" or was subject to a specific exclusion under the policy.