George SPADA; Marietta Spada, Plaintiffs—Appellants,

v.

UNIGARD INSURANCE CO., Defendant—Appellee.

No. 02–35494.

D.C. No. CV–00–01657–AJB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Decided Oct. 28, 2003.

---

Mark C. McClanahan, Allen, Sheridan & McClanahan, Portland, OR, for Plaintiff–Appellant.

John A. Bennett, R. Daniel Lindahl, Lisa E. Lear, Margaret M. Van Valkenburg, Bullivant Houser Bailey, PC, Portland, OR, for Defendant–Appellee.

Before TROTT, FISHER and GOULD, Circuit Judges.

## MEMORANDUM*

George and Marietta Spada (the "Spadas") appeal the district court's grant of summary judgment in favor of Unigard Insurance Company ("Unigard"). Three issues are presented: (1) whether Unigard had a duty to defend the Spadas against directives issued by the City of Portland (the "City"); (2) whether Unigard's duty to defend related to the underlying action extended to the Spadas' affirmative claims; and (3) whether Unigard had the duty to indemnify the Spadas for the costs of remediating their property. Because we conclude that the district court erred, we reverse and remand for further proceedings.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

The parties are familiar with the facts, which will be discussed only to the extent they are relevant to the discussion below.

## I.

In determining Unigard's duty to defend, we look only to the City's directives and the Spadas' insurance policy to determine whether the claim could impose liability for occurrences covered by the policy. *Ledford v. Gutoski*, 319 Or. 397, 877 P.2d 80, 82 (1994). Ambiguities in claims are resolved against the insurer. *Id.* at 83. Because damage to the Spada's own property is excluded from coverage under the policy, the City must have alleged that "property damage" occurred to property other than the Spadas' lot.

■ We consider the City's letters to the Spadas to constitute a "claim," because the policy does not define that term more narrowly and Unigard has not seriously contested the issue. In each of the letters received by the Spadas, the City referred to the public right-of-way as well as neighboring property belonging to others. The letters are somewhat ambiguous with regard to whether they refer to actual "property damage" that had occurred to the non-Spada properties, as opposed to merely a threat of future "property damage." The policy defines "property damage" to include "loss of use." The letters may be reasonably construed to allege current "loss of use" to the public right-of-way and perhaps to neighboring properties, which were placed in danger as a result of the condition of the Spadas' property. *Klamath Pac. Corp. v. Reliance Ins. Co.*, 151 Or.App. 405, 950 P.2d 909, 914 (1997) (holding that a duty to defend attaches where allegations are unclear or ambiguous but may be interpreted reasonably to include an incident within the coverage of the policy).

We conclude that the letters were ambiguous and so resolve those ambiguities against Unigard. Thus construed, the letters stated a claim within Unigard's duty to defend. However, the record on appeal does not make clear the extent to which Unigard failed to fulfill this duty to defend. We therefore reverse and remand to the district court to determine whether a triable issue of fact remains with regard to the scope of Unigard's unfulfilled duty to defend against the City's directives.

## II.

■ We affirm the district court's decision that Unigard's duty to defend in the underlying action did not extend to the Spadas' affirmative claims.

In determining whether Unigard had a duty to prosecute the Spadas' affirmative defenses, we look to the language of the policy to determine the intention of the parties. *Hoffman Constr. Co. of Alaska v. Fred S. James & Co., of Oregon*, 313 Or. 464, 836 P.2d 703, 706 (1992). Again, we construe ambiguous terms against the insurer. *Id.*

The policy provides that Unigard will "provide a defense" at its expense. The policy does not delimit the term "defense" in its definitions section. *Black's Law Dictionary* defines "defense" in its first two entries as: (1) "[t]hat which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks"; and (2) "[t]hat which is put forward to diminish plaintiff's cause of action or defeat recovery." *Black's Law Dictionary* 419 (6th ed.1990).

The counterclaims and cross-claims for which the Spadas seek reimbursement of their expenses were not offered as a "reason in law or fact why the plaintiff should not recover," nor as a means of diminishing the McCormicks' cause of action. In-

stead, the affirmative claims sought an award for damages that the *Spadas* had suffered both as a result of the landslide and as a result of actions taken by the McCormicks and the City after the landslide had occurred. Because the affirmative claims do not come within the terms of the policy, we need not determine whether Oregon courts would adopt the rule of *Safeguard Scientifics, Inc. v. Liberty Mutual Ins. Co.,* 766 F.Supp. 324 (E.D.Pa. 1991).

### III.

■ In determining whether Unigard had a duty to indemnify the Spadas' remediation efforts, we again look to the language of the policy to determine the intention of the parties and construe ambiguous terms against the insurer. *Hoffman,* 836 P.2d at 706. We conclude that the Spadas were "legally liable" for the remediation within the terms of the policy.

The policy does not define the term "legally liable." *Black's Law Dictionary* defines the term as "[l]iable under law as interpreted by courts." *Black's Law Dictionary* at 895. "Liable" has numerous definitions, but most pertinent is "bound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation or restitution." *Id.* at 915.

The district court found that the Spadas were not "legally liable" because a jury had concluded in the underlying action that the City and the McCormicks were 100 percent at fault for causing the landslide and awarded damages to the Spadas. The term "legally liable" cannot be so narrowly construed in the absence of a definition in the policy so limiting it.

The fact that the Spadas were not at fault for the landslide that caused the damage does not mean that they were not legally liable to remediate the hazardous condition on their property. They were required to do so pursuant to the City code and under threat of substantial fines, personal liability and further legal action. That they received partial recompense for the costs they bore is relevant only to the amount of damages to which they may be ultimately entitled from Unigard.

Some issues of fact remain because the duty to indemnify, unlike the duty to defend, arises from facts proved at trial. *STK Enters., Inc. v. Crusader Ins. Co.,* 171 Or.App. 9, 14 P.3d 638, 642 (2000). First, as the district court found and we agree, the Spadas have presented sufficient evidence to create a fact question as to whether the City required them to repair the public right-of-way in addition to their own property. Second, although we determined that the City had alleged "property damage" to non-Spada property sufficient to create a duty to defend, the duty to indemnify will only attach if at trial it is proven that actual "property damage" had occurred, *i.e.* actual damage to, or loss of use of, the right-of-way. We agree with the district court that the Spadas have presented sufficient evidence to raise an issue of material fact in this regard as well.

### IV.

In light of the above, we deny the Spadas' motion for certification, because the question of the constitutionality of the City's code provision is not determinative of the outcome above. Or.Rev.Stat. § 28.200 (2003).

The Spadas are awarded their costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**